IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION

NO. 2:12-CR-14-1

FILED
JUN 21 2012
JULIE A. RICHARDS, CLERK
US DISTRICT COURT, EDNC
BY KM DEP CLK

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | CRIMINAL INFORMATION |
| ) | |
| ACADEMI, LLC ) | |
| f/k/a XE SERVICES, LLC ) | |
| f/k/a BLACKWATER WORLDWIDE ) | |

The United States Attorney charges that:

At all times material to this Criminal Information:

**GENERAL ALLEGATIONS**

ACADEMI, LLC, formerly operated under the name XE SERVICES, LLC, and BLACKWATER WORLDWIDE, and in fact for all purposes a corporate successor-in-interest of Xe SERVICES/BLACKWATER WORLDWIDE, is referred to herein as "ACADEMI/BLACKWATER".

ACADEMI/BLACKWATER did business through a series of subsidiaries and affiliates including: EP Investments, L.L.C., Blackwater Lodge and Training Center, Inc., (formerly f/k/a Blackwater USA and n/k/a U.S. Training Center, Inc.), Blackwater Security Consulting LLC, (formerly d/b/a Blackwater Maritime Solutions), Blackwater West LLC, GSD Manufacturing LLC (f/k/a Blackwater Target Systems LLC and formerly d/b/a Blackwater Manufacturing) Blackwater ProShop LLC, Blackwater Logistics LLC

(cancelled on May 1, 2008), Blackwater Armor & Targets LLC (cancelled on March 28, 2008), Guardian Flight Systems LLC (f/k/a Blackwater Airships LLC,) Black Group, LLC (owned by Prince Group LLC and cancelled on July 2, 2008), Apex Management Services LLC, Samarus CO LTD, Greystone, LTD, Greystone SRL, Salamis Aviation LLC, Al-Zulama Company, Raven Development Group LLC (cancelled on August 12, 2009), BWT Services LLC, E&J Holdings LLC, E&J Leasing LLC, EP Management Services, LLC, Paravant LLC, Xe Aviation LLC, XPG LLC, Prince Group LLC, (affiliate), Total Intelligence Solutions LLC, Technical Defense, Inc. and Terrorism Research Center, Inc. (owned and operated by Prince Group LLC). All of these were owned by a single holding company and nearly all of them were controlled by the same ACADEMI/BLACKWATER officers located in Moyock, North Carolina.

ACADEMI/BLACKWATER's primary source of business and revenue was the provision of security, training, logistical and aviation services to federal and local government agencies. They provided such services and pursued additional business both within the United States and overseas.

### The International Emergency Economic Powers Act

1. The International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. §§ 1701-1706, authorizes the President of the United States ("the President") to impose economic sanctions on a foreign country in response to an unusual or extraordinary

2

threat to the national security, foreign policy or economy of the United States when the President declares a national emergency with respect to that threat.

2. On November 3, 1997, the President issued Executive Order 13067 finding that the policies and actions of the Government of Sudan "constitute an unusual and extraordinary threat to the national security and foreign policy of the United States" and declaring "a national emergency to deal with that threat." Executive Order 13067 imposed economic sanctions, including a trade embargo, against the entire territory of Sudan. It prohibited, among other things, "the exportation or re-exportation, directly or indirectly to Sudan of any goods, technology (including technical data, software, or other information), or services from the United States or by a United States person, wherever located, or requiring the issuance of a license by a Federal agency."

3. After a lengthy civil war in Sudan, the Government of Southern Sudan was created on January 9, 2005, pursuant to the Comprehensive Peace Agreement signed between the Government of Sudan and the Sudan Peoples' Liberation Movement. On October 13, 2006, the President issued Executive Order 13412, which continued the sanctions against Sudan imposed by Executive Order 13067 but excluded specified areas of Southern Sudan from the scope of the blocking authority under Executive Order 13067. As set forth

3

below, notwithstanding Executive Order 13412, the restrictions set forth under the International Traffic in Arms Regulations, 22 C.F.R. § 126.1, remained in place against all parts of Sudan, including Southern Sudan, at all times relevant to this information.

### The Sudanese Sanctions Regulations

4. The Executive Orders authorized the Secretary of the Treasury, in consultation with the Secretary of State, "to take such actions, including the promulgation of rules and regulations, as may be necessary to carry out the purposes" of the Executive Orders. Pursuant to this authority, the Secretary of the Treasury promulgated the Sudanese Sanctions Regulations ("SSR"), 31 C.F.R. Part 538, implementing the sanctions imposed by the Executive Orders.

5. Under the Sudanese Sanctions Regulations, 31 C.F.R. Part 538:

   a. Section 538.205 prohibited the exportation or re-exportation, directly or indirectly, to Sudan of any goods, technology (including technical data, software, or other information) or services from the United States or by a United States person, wherever located, or requiring the issuance of a license by a Federal agency. 31 C.F.R. § 538.205.

4

b. Section 538.411 prohibited the exportation of goods or technology from the United States to third countries if the exporter knows, or has reason to know, that the goods or technology are intended for transshipment to Sudan. 31 C.F.R. § 538.411.

6. The United States Department of the Treasury's Office of Foreign Assets Control ("OFAC"), located in the District of Columbia, had responsibility for administering the SSR, and was the entity empowered to authorize transactions with Sudan during the embargo. Such authorization, if granted, would be in the form of a license.

7. Under IEEPA, 50 U.S.C. § 1705, willful violations of these regulations constitute criminal acts.

### The Arms Export Control Act
### and the International Traffic in Arms Regulations

8. In furtherance of the national security and foreign policy interests of the United States, the United States regulates and restricts the export of arms, munitions, implements of war and other defense articles and services, pursuant to the Arms Export Control Act ("AECA"), 22 U.S.C. § 2278, et seq. The Act requires every person engaged in the business of exporting defense articles from the United States and providing defense

5

services to obtain a license or other approval from the U.S. Department of State. 22 U.S.C. § 2778(b)(1)(A)(i).

9. The regulations which implement and govern such exports are entitled the International Traffic in Arms Regulations ("ITAR"), 22 C.F.R. Parts 120-130.

10. The ITAR defines a defense article and service to be any item on the United States Munitions List ("USML") contained in the regulations. The USML sets forth twenty-one categories of defense articles and services that are subject to export licensing controls by the State Department's Directorate of Defense Trade Controls ("DDTC"). 22 C.F.R. § 121.1.

11. No defense articles or defense services, or technical data related thereto, may be exported from the United States to a foreign country without first obtaining a validated license or written approval from the DDTC. 22 C.F.R. § 127.1.

12. With regard to countries against which the United States has an arms embargo and which are listed in 22 C.F.R. § 126.1, the ITAR provides that:

> a. "It is the policy of the United States to deny licenses and other approvals for exports and imports of defense articles and defense services, destined for or originating in certain countries. . . . This policy also applies to countries with respect to which the United States maintains an

6

arms embargo (e.g.,...Sudan)...." 22 C.F.R. § 126.1(a).

b. In addition, Section 126.1 of the ITAR provides that "no proposal to sell or transfer any defense articles, defense services or technical data subject to this subchapter may be made to any country referred to in this section . . ., or to any person acting on its behalf, whether in the United States or abroad, without first obtaining a license or written approval of the [DDTC]. However, in accordance with paragraph (a) of this section, it is the policy of the Department of State to deny licenses and approvals in such cases." 22 C.F.R. § 126.1(e).

13. Under AECA, 22 U.S.C. § 2278, willful violations of these regulations constitute criminal acts

**The Federal Gun Control Act and the National Firearms Act**

14. At all times relevant to this Criminal Information, ACADEMI/BLACKWATER was a Federally Licensed Firearms Dealer (FFL).

15. Pursuant to the Federal Gun Control Act, 18 U.S.C. §§ 921 et seq., Federally Licensed Firearms Dealers ("FFLs") are required by law to maintain truthful, accurate and detailed records relevant to the acquisition and disposition of all

7

firearms which come within their control. Federally Licensed Firearms Dealers are also subject to inspection to ensure their compliance with these record keeping requirements.

16. Pursuant to the National Firearms Act, 26 U.S.C. §§ 5801-5872, fully automatic weapons and rifles with barrels less than a certain length, because of their inherent dangerousness, are subject to enhanced levels of regulation. Only certain classes of FFLs are permitted to have in their inventory such weapons and are subject to both quantity restrictions and registration requirements. These requirements are set out principally in Title 26, United States Code, Sections 5841-5849. Among other provisions, these sections establish that even a qualifying FFL is limited to two samples of any model machine gun and must register both of them as required by statute. Qualified FFLs may be permitted to possess larger numbers of Short Barrel Rifles (SBRs) but each must be registered. Short Barrel Rifles are defined as including any rifle with a barrel length of less than 16 inches.

17. Qualified law enforcement agencies, subject to certain requirements, are permitted to have in their inventories fully automatic weapons. However, they must register these weapons as required by statute and are not permitted to transfer them except under limited circumstances also specified by statute. They have no authority to transfer more than two automatic weapons of the

8

same make and model even to a qualifying FFL, and even then, must register such a transfer before delivering the weapons.

## COUNT ONE
### (Violation of the IEEPA)

18. The allegations in Paragraphs 1 through 17 of the General Allegations are incorporated and realleged by reference in this Count.

19. In or about November, 2005, in the Eastern District of North Carolina and elsewhere, the defendant, ACADEMI/BLACKWATER, did knowingly and willfully export and cause to be exported from the United States to Sudan, Iridium Satellite phones, without having first obtained the required authorization from the Secretary of the Treasury, in violation of Title 50, United States Code, Sections 1701-1705; Title 31, Code of Federal Regulations Part 538.

## COUNT TWO
### (Violation of the IEEPA)

20. The allegations in Paragraphs 1 through 17 of the General Allegations are incorporated and realleged by reference in this Count.

21. In or about November, 2005, in the Eastern District of North Carolina and elsewhere, the defendant, ACADEMI/BLACKWATER, did knowingly and willfully export and cause to be exported, and knowingly and willfully attempted to export, from the United States to Sudan, Crypto Satellite phones, without having first

9

obtained the required authorization from the Secretary of the Treasury, in violation of Title 50, United States Code, Sections 1701-1705; Title 31, Code of Federal Regulations Part 538.

## COUNT THREE
### (Violations of the AECA and ITAR)

22. The allegations in Paragraphs 1 through 17 of the General Allegations are incorporated and realleged by reference in this Count.

23. Between on or about October 1, 2006, and November 30, 2006, in the Eastern District of North Carolina and elsewhere, the defendant, ACADEMI/BLACKWATER, did knowingly and willfully propose to sell and transfer defense services from the United States to Sudan, that is, a proposal to provide a security and threat assessment, which included defense services within the meaning of the AECA and ITAR, without first having obtained from the Department of State a license for such export, in violation of Title 22, United States Code, Section 2778 and Title 22, Code of Federal Regulations, Section 126.1(e).

## COUNT FOUR
### (Violations of the AECA and ITAR)

24. The allegations in Paragraphs 1 through 17 of the General Allegations are incorporated and realleged by reference in this Count.

25. Between on or about October 1, 2006, and June 30, 2008, in the Eastern District of North Carolina and elsewhere, the defendant, ACADEMI/BLACKWATER, did knowingly and willfully furnish and cause to be furnished to foreign persons defense services within the meaning of AECA and ITAR, that is, military training relating to overseas military operations, without having first obtained from the Department of State a license for such action or written authorization for such action, that is, the defendant did at its Moyock, North Carolina, facility conduct training of military and law enforcement personnel from Canada in a course entitled "Mirror Image", all in violation of Title 22, United States Code, Section 2778 and Title 22, Code of Federal Regulations, Section 127.1.

## COUNT FIVE
### (Violations of the AECA and ITAR)

26. The allegations in Paragraphs 1 through 17 of the General Allegations are incorporated and realleged by reference in this Count.

11

27. Between on or about January 1, 2006, and December 30, 2008, in the Eastern District of North Carolina and elsewhere, the defendant, ACADEMI/BLACKWATER, did knowingly and willfully export and cause to be exported from the United States to foreign persons a defense article, specifically, technical and engineering data relating to the construction of armored personnel carriers, which were designated as a defense article on the United States Munitions List, without having first obtained from the Department of State a license for such export or written authorization for such export, that is, the defendant did employ foreign individuals from Sweden and Denmark for the purpose of designing and manufacturing armored personnel carriers and in the course of doing so did provide them with controlled technical and engineering data, all in violation of Title 22, United States Code, Section 2778 and Title 22, Code of Federal Regulations, Section 127.1.

## COUNT SIX
### (Violations of the AECA and ITAR)

28. The allegations in Paragraphs 1 through 17 of the General Allegations are incorporated and realleged by reference in this Count.

29. Between on or about October, 2004, and March, 2006, in the Eastern District of North Carolina and elsewhere, the defendant, ACADEMI/BLACKWATER, did knowingly and willfully export

12

and cause to be exported from the United States to Iraq and Afghanistan, a defense article, that is, ammunition and body armor, which were designated as a defense article on the United States Munitions List without having first obtained from the Department of State a license for such export or written authorization for such export, all in violation of Title 22, United States Code, Section 2778 and Title 22, Code of Federal Regulations, Section 127.1.

## COUNT SEVEN
### (Violation of the National Firearms Act)

30. The allegations in Paragraphs 1 through 17 of the General Allegations are incorporated and realleged by reference in this Count.

31. Beginning on or about June 10, 2005, and continuing to June 24, 2008, in the Eastern District of North Carolina and elsewhere, the defendant, ACADEMI/BLACKWATER, and others, did knowingly and illegally receive and possess firearms not registered to it in the National Firearms Registration and Transfer Record, that is, approximately 17 Bushmaster M4 machine guns, held in the armory of ACADEMI/BLACKWATER, and did aid and abet others in doing so, in violation of Title 26, United States Code, Section 5861(d) and Title 18, United States Code, Section 2.

13

## COUNT EIGHT
### (Violation of the Federal Gun Control Act)

32. The allegations in Paragraphs 1 through 17 of the General Allegations are incorporated and realleged by reference in this Count.

33. Beginning on or about June 10, 2005, and continuing to June 24, 2008, in the Eastern District of North Carolina and elsewhere, the defendant, ACADEMI/BLACKWATER, and others, did knowingly and illegally receive and possess firearms not registered to it in the National Firearms Registration and Transfer Record, that is, approximately 17 Romanian AK47 machine guns, held in the armory of ACADEMI/BLACKWATER, and did aid and abet another in doing so, in violation of Title 26, United States Code, Section 5861(d) and Title 18, United States Code, Section 2.

## COUNT NINE
### (Violation of the Federal Gun Control Act)

34. The allegations in Paragraphs 1 through 17 of the General Allegations are incorporated and realleged by reference in this Count.

35. Beginning on or about June 20, 2005, and continuing to June 24, 2008, in the Eastern District of North Carolina and elsewhere the defendant, ACADEMI/BLACKWATER, and others, did knowingly and illegally possess machine guns, that is, approximately 17 Romanian AK47s, held in the armory of

ACADEMI/BLACKWATER in Moyock, North Carolina, and did aid and abet others in doing so, in violation of Title 18, United States Code, Section 922(o)(1) and 2.

## COUNT TEN
### (Violation of the Firearms statute)

36. The allegations in Paragraphs 1 through 17 of the General Allegations are incorporated and realleged by reference in this Count.

37. Beginning on or about June 10, 2005, and continuing to June 24, 2008, in the Eastern District of North Carolina and elsewhere, the defendant, ACADEMI/BLACKWATER, and others, did knowingly and illegally possess machine guns, that is, approximately 17 Bushmaster M4s held in the armory of ACADEMI/BLACKWATER in Moyock, North Carolina, and did aid and abet others in doing so, in violation of Title 18, United States Code, Section 922(o)(1) and 2.

## COUNT ELEVEN
### (Violation of the Firearms statute)

38. The allegations in Paragraphs 1 through 17 of the General Allegations are incorporated and realleged by reference in this Count.

39. Beginning on or about January 29, 2003, and continuing to on or about July 3, 2008, in the Eastern District of North Carolina and elsewhere the defendant, ACADEMI/BLACKWATER, and others, did knowingly and illegally possess machine guns, that

is, two Steyr machine guns, and did aid and abet others in doing so, in violation of Title 18, United States Code, Section 922(o)(1) and 2.

## COUNT TWELVE
### (Violation of the National Firearms Act)

Beginning on or about January 29, 2003, and continuing to July 3, 2008, in the Eastern District of North Carolina and elsewhere, the defendant, ACADEMI/BLACKWATER, and others, did knowingly and illegally receive and possess firearms not registered to it in the National Firearms Registration and Transfer Record, that is, two Steyr machine guns, held in the armory of ACADEMI/BLACKWATER, and did aid and abet each other in doing so, in violation of Title 26, United States Code, Section 5861(d) and Title 18, United States Code, Section 2.

## COUNT THIRTEEN
### (Violation of the Federal Gun Control Act)

40. The allegations in Paragraphs 1 through 17 of the General Allegations are incorporated and realleged by reference in this Count.

41. On or about June 8, 2005, in the Eastern District of North Carolina and elsewhere, the defendant, ACADEMI/BLACKWATER, and others, knowingly made a false statement and representation with respect to information required to be maintained in the records of a federally licensed firearms dealer, specifically, information contained in an ATF Form 4473, in that it falsely

16

Case 2:12-cr-00014-FL   Document 1   Filed 06/21/12   Page 16 of 20

completed an ATF Form 4473 representing a certain individual as the purchaser of a Glock 19 handgun, serial #GGA645, which firearm, as it was known to ACADEMI/BLACKWATER, had actually been gifted to the King of Jordan and/or his entourage, and did aid and abet others in doing so, in violation of Title 18 United States Code, Section 924(a)(1)(A) and 2.

## COUNT FOURTEEN
### (Violation of the Federal Gun Control Act)

42. The allegations in Paragraphs 1 through 17 of the General Allegations are incorporated and realleged by reference in this Count.

43. On or about June 20, 2005, in the Eastern District of North Carolina and elsewhere, the defendant, ACADEMI/BLACKWATER, and others, knowingly made a false statement and representation with respect to information required to be maintained in the records of a federally licensed firearms dealer, specifically, information contained in an ATF Form 4473, in that it falsely completed an ATF Form 4473 representing a certain individual as the purchaser of a Glock 19 handgun, serial #GGA645, which firearm, as it was known to ACADEMI/BLACKWATER, had actually been gifted to the King of Jordan and/or his entourage, and did aid and abet others in doing so, in violation of Title 18 United States Code, Section 924(a)(1)(A) and 2.

## COUNT FIFTEEN
### (Violation of the Federal Gun Control Act)

44. The allegations in Paragraphs 1 through 17 of the General Allegations are incorporated and realleged by reference in this Count.

45. On or about June 20, 2005, in the Eastern District of North Carolina and elsewhere, the defendant, ACADEMI/BLACKWATER, and others, knowingly made a false statement and representation with respect to information required to be maintained in the records of a federally licensed firearms dealer, specifically, information contained in an ATF Form 4473, in that it falsely completed an ATF Form 4473 representing a certain individual as the purchaser of a Glock 17 handgun which firearm, as it was known to ACADEMI/BLACKWATER, had actually been gifted to the King of Jordan and/or his entourage, and did aid and abet others in doing so, in violation of Title 18 United States Code, Section 924(a)(1)(A) and 2.

## COUNT SIXTEEN
### (Violation of the Federal Gun Control Act)

46. The allegations in Paragraphs 1 through 17 of the General Allegations are incorporated and realleged by reference in this Count.

47. On or about August 16, 2005, in the Eastern District of North Carolina and elsewhere, the defendant, ACADEMI/BLACKWATER, and others, knowingly made a false statement and representation

18

with respect to information required to be maintained in the records of a federally licensed firearms dealer, specifically, information contained in an ATF Form 4473, in that it falsely completed an ATF Form 4473 representing a certain individual as the purchaser of a Glock 19 handgun serial #GGA647 which firearm, as it was known to ACADEMI/BLACKWATER, had actually been gifted to the King of Jordan and/or his entourage, and did aid and abet others in doing so, in violation of Title 18 United States Code, Section 924(a)(1)(A) and 2.

## COUNT SEVENTEEN
### (Violation of the Federal Gun Control Act)

48. The allegations in Paragraphs 1 through 17 of the General Allegations are incorporated and realleged by reference in this Count.

49. On or about August 19, 2005, in the Eastern District of North Carolina and elsewhere, the defendant, ACADEMI/BLACKWATER, and others, knowingly made a false statement and representation with respect to information required to be maintained in the records of a federally licensed firearms dealer, specifically information contained in an ATF Form 4473, in that it falsely completed an ATF Form 4473 representing a certain individual as the purchaser of a Bushmaster M4 rifle and a Remington shotgun which firearms, as it was known to ACADEMI/BLACKWATER, had actually been gifted to the King of Jordan and/or his entourage,

19

and did aid and abet others in doing so, in violation of Title 18 United States Code, Section 924(a)(1)(A).

THOMAS G. WALKER
United States Attorney

BY: JOHN S. BOWLER
Assistant United States Attorney